IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JENNIFER MELL and JOSE MUNOZ,        )
  individually and on behalf of      )
  those similarly situated,          )
                                     )
      Plaintiffs,                    )
                                     )
          vs.                        )    Civil Action No. 10-945
                                     )
GNC CORPORATION, a Delaware          )
  corporation, and GENERAL           )
  NUTRITION CENTERS, INC., a         )
  Delaware corporation,              )
                                     )
      Defendants.                    )

**MEMORANDUM OPINION**

Pending before the Court is a motion by Defendants GNC
Corporation ("GNC") and General Nutrition Centers, Inc.
("General Nutrition") (Doc. No. 27), seeking to dismiss the
Amended Complaint in this matter pursuant to Federal Rule of
Civil Procedure 12(b)(6).   For the reasons discussed below,
Defendants' motion is granted.

**I.    BACKGROUND**

A.    Factual History

In normal circumstances, the Court would summarize the
facts of the case according to the version of the complaint
which the defendant seeks to have dismissed.   However, to fully

1

understand Defendants' arguments herein, it is necessary to compare the initial complaint ("Complaint") and the amended version now in question (Doc. No. 22, "Am. Compl.")

According to the Complaint, the named Plaintiffs, Jennifer Mell and Jose Munoz, were employees of Defendant GNC.[1] During the period between July 2007 and July 16, 2007, the date on which the Complaint was filed, they performed non-exempt work at GNC retail stores, Ms. Mell in Maryland and Mr. Munoz in the Syracuse, New York area. Each Plaintiff "regularly worked in excess of Forty (40) hours per week in one or more weeks during [his/her] employment with Defendant." (Complaint, ¶¶ 1-3, 13-14.) Instead of paying overtime wages, Defendant misclassified Plaintiffs and the putative members of the collective action class as "Managers" and considered them exempt from the overtime provisions of the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 et seq. ("FLSA.") Moreover, GNC failed to maintain records of Plaintiffs' actual start times, stop times, hours worked each day, and hours worked each week. (Id., ¶¶ 17-18.)

Plaintiffs sought to represent a class of similarly situated former and current GNC employees

"who have worked in the position of 'Manager' at any of Defendant's stores in the United States and have worked in excess of Forty (40) hours during one or

[1] In the initial complaint, the only defendant identified was GNC; General Nutrition was added as a defendant in the Amended Complaint.

more work weeks between July 2007 and the present but did not receive time and a half of their regular rate of pay for all of the hours they worked over Forty (40) in one or more work weeks," including work weeks while Plaintiffs and the similarly situated employees were in training for the position of 'Manager.'

(Complaint, ¶¶ 11-12.)

As relief, Plaintiffs sought overtime compensation for hours worked in excess of 40 per week during their employment with GNC dating back to July 2007. Because Defendant's actions were knowing and willful, Plaintiffs also claimed that they were entitled to liquidated damages, costs, reasonable attorneys' fees, and prejudgment interest. (Complaint, ¶ 21, and prayer for relief at 5-6.)

After Defendant GNC filed a motion to dismiss (see Procedural History below), Plaintiffs filed an Amended Complaint in which they alleged that they "performed non-exempt work" while in "Manager" positions. Ms. Mell was employed from 1983 until about December 2008; Mr. Munoz was employed from 2004 to about December 2008. (Am. Compl., ¶¶ 2-3.) They each worked more than 40 hours a week and were entitled to overtime salary because their positions were classified as non-exempt. (Id., ¶ 18.) Each Plaintiff and member of the putative class was paid on a salary basis and was "eligible to be paid overtime under GNC's uniform compensation system for calculating overtime due

3

salaried employees." (Am. Compl., ¶¶ 19-20.) However,

Defendants

> failed to credit and pay overtime hours properly for
> all of the overtime hours worked by Plaintiffs and
> other workers in the asserted class, due in part to a
> policy or practice by [Defendants] of requiring or
> suffering Plaintiffs and such workers to work through
> lunch while off the clock, to work scheduled overtime
> hours while off the clock, and to work additional
> hours or shifts while off the clock, all as part of a
> pervasive system to control overtime expense.

(Am. Compl., ¶ 21.)

Plaintiffs assert that they "cannot precisely allege with

specificity" the number of uncompensated hours or the extent of

the inaccuracies in Defendants' records without discovery.

(Id., ¶ 22.) Moreover,

> [b]ecause the pay system at issue calculates overtime
> at a different rate for each workweek with varying
> hours and varying regular pay (including incentives
> that are part of regular pay), Plaintiffs cannot
> precisely allege with specificity the overtime pay
> rates applicable to each workweek at issue without
> further discovery of the regular pay made to
> Plaintiffs each week, including varying incentive
> payments included in regular wages from time to time,
> and the extent of uncompensated hours.

(Am. Compl., ¶ 23.)

The allegations that Defendants knowingly and willfully

failed to adhere to the provisions of the FLSA and the prayer

for relief in the Amended Complaint are the same as in the

original Complaint.

4

### B. Procedural History

As noted above, Plaintiffs filed a putative collective action suit in this Court on July 16, 2010. On August 10, 2010, Defendant filed a motion to dismiss (Doc. No. 6), arguing that the Complaint did not provide sufficiently detailed allegations to satisfy the requirements of Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Instead of filing a response to the motion to dismiss as directed by the Court, Plaintiffs filed the Amended Complaint summarized in the previous section.

On September 28, 2010, Defendants filed the now-pending motion to dismiss, arguing that the Amended Complaint should be dismissed for the same lack of specificity. The parties having thoroughly briefed their positions, the motion is now ripe for decision.

## II. **JURISDICTION AND VENUE**

This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 216(b). Venue is appropriate in this District inasmuch as Defendants are headquartered and therefore "reside" in this district. 28 U.S.C. § 1391(b).

## III. **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 8(a) requires that a pleading which "states a claim for relief must contain. . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief." The Rule further provides that "[e]ach allegation must be simple, concise, and direct" but "[n]o technical form is required." Fed. R. Civ. P. 8(d). "The touchstone of Rule 8(a)(2) is whether a complaint's statement of facts is adequate to suggest an entitlement to relief under the legal theory invoked and thereby put the defendant on notice of the nature of the plaintiff's claim." In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 2010 U.S. App. LEXIS 17107, *45-*46, n.18 (3d Cir. Aug. 16, 2010) ("Brokerage Antitrust"), *citing* Twombly, 550 U.S. at 565, n.10.

In the aftermath of Twombly and Iqbal, and the interpretation of those two cases by the United States Court of the Appeals for the Third Circuit in a series of precedential opinions, the pleading standards which allow a complaint to withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) have taken on slightly new parameters. Beginning in Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008), the Court of Appeals noted, "After Twombly, 'it is no longer sufficient to allege mere elements of a cause of

6

action;' instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Phillips, 515 F.3d at 233, *quoting* Twombly, 550 U.S. at 563, n.8 (alteration in original.) Because "[c]ontext matters in notice pleading," the Phillips Court held that "some complaints will require at least some factual allegations to make out a 'showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id., *quoting* Twombly, 550 U.S. at 555; *see also* McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009).

In Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009)[2] the Court of Appeals noted that following Twombly and Iqbal, conclusory "bare-bones" allegations that "the defendant unlawfully harmed me" no longer suffice. A civil complaint must now include "sufficient factual matter to show that the claim is

---

[2] We recognize that the Court of Appeals may have stepped back somewhat from its discussion in Fowler, 578 F.3d at 211, which described Twombly and Iqbal as having "repudiated" the earlier Supreme Court decision in Swierkiewizc v. Sorema N.A., 534 U.S. 506 (2002) (*see* Brokerage Antitrust, 2010 U.S. App. LEXIS 17107, *43-*44, n.17), but the two-step process described by the Court of Appeals in Fowler remains the standard the reviewing court must apply. *See*, e.g., Culinary Serv. of Del. Valley, Inc., v. Borough of Yardley, No. 09-4182, 2010 U.S. App. LEXIS 13485, *9-*10 (3d Cir. June 30, 2010), stating, "First, we must distinguish between factual allegations and legal conclusions in the complaint; second, if the complaint sets forth well-pleaded factual allegations, we may assume their veracity and draw inferences favorable to the non-moving party, but then must determine whether the factual allegations show an entitlement to relief." This is essentially a summation of the process described in Fowler as quoted in the text above.

facially plausible." Fowler, 578 F.3d at 210; *see also* Twombly,

550 U.S. at 555, holding that a complaint which offers only

"labels and conclusions" or "a formulaic recitation of the

elements of a cause of action will not do." The Fowler court

further directed that

> after Iqbal, when presented with a motion to dismiss
> for failure to state a claim, district courts should
> conduct a two-part analysis. First, the factual and
> legal elements of a claim should be separated. The
> District Court must accept all of the complaint's
> well-pleaded facts as true, but may disregard any
> legal conclusions. Second, a District Court must then
> determine whether the facts alleged in the complaint
> are sufficient to show that the plaintiff has a
> plausible claim for relief. In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to show such
> an entitlement with its facts. As the Supreme Court
> instructed in Iqbal, "[w]here the well-pleaded facts
> do not permit the court to infer more than the mere
> possibility of misconduct, the complaint has
> alleged - but it has not shown - that the pleader is
> entitled to relief."

Fowler, 578 F.3d at 210-211 (quotations and citations omitted.)

The Court of Appeals explained the logic behind this

approach in Great Western Mining & Mineral Co. v. Fox Rothschild

LLP, 615 F.3d 159 (3d Cir. 2010), stating that

> "a court considering a motion to dismiss can choose to
> begin by identifying pleadings that, because they are
> no more than conclusions, are not entitled to the
> assumption of truth. . . .When there are well-pleaded
> factual allegations, a court should assume their
> veracity and then determine whether they plausibly
> give rise to an entitlement to relief." With respect
> to conclusory allegations, the [Supreme] Court

clarified that "we do not reject these bald
allegations on the ground that they are unrealistic or
nonsensical. . . .It is the conclusory nature of
[such] allegations, rather than their extravagantly
fanciful nature, that disentitles them to the
presumption of truth."

Great Western Mining, 615 F.3d at 177, quoting Iqbal, 129 S. Ct.
at 1950-1951.

Thus, the current formulation of the standard of review for
a motion to dismiss under Rule 12(b)(6) asks the court to
determine if the plaintiff's claims are "plausible." "A claim
has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged."
Iqbal, 129 S. Ct. at 1949; see also Gelman v. State Farm Mut.
Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009); Mayer v.
Belichick, 605 F.3d 223, 230 (3d Cir. 2010); and Bob v. Kuo, No.
20-1615, 2010 U.S. App. LEXIS 14965, * 4 (3d Cir. July 20, 2010)
(quoting Iqbal, id., for the idea that "[t]he plausibility
standard 'asks for more than a sheer possibility that a
defendant has acted unlawfully.'") "[W]hat suffices to
withstand a motion to dismiss necessarily depends on substantive
law and the elements of the specific claim asserted." Brokerage
Antitrust, 2010 U.S. App. LEXIS 17107, * 46, n.18. Some claims
will demand relatively more factual detail to satisfy this

9

standard, while others require less. *See* <u>Arista Records LLC v.</u>
<u>Doe</u>, 604 F.3d 110, 120 (2d Cir. 2010), stating that although the
Supreme Court's recent Rule 8 decisions did not heighten
pleading requirements, <u>Twombly</u> and <u>Iqbal</u> held that complaints
"require factual amplification [where] needed to render a claim
plausible." (Internal quotation omitted; alteration in the
original.) As noted in <u>Iqbal</u>, Rule 8 "marks a notable and
generous departure from the hyper-technical, code-pleading
regime of a prior era, but it does not unlock the doors of
discovery for a plaintiff armed with nothing more than
conclusions." <u>Iqbal</u>, 129 S. Ct. at 1950. "Determining whether
a complaint states a plausible claim for relief will. . .be a
context-specific task that requires the reviewing court to draw
on its judicial experience and common sense." <u>Brokerage</u>
<u>Antitrust</u>, 2010 U.S. App. LEXIS 17170 at \*177, *quoting* <u>Iqbal</u>,
<u>id.</u>; <u>McTernan</u>, 577 F.3d at 530 (same.)

The Third Circuit's latest direction is that "[w[e must
accept as true the factual allegations in the complaint and all
reasonable inferences that can be drawn therefrom, but we
require more than mere assertions devoid of further factual
enhancement." <u>Dawson v. Frias</u>, CA No. 10-2200, 2010 U.S. App.
LEXIS 21278, \*2 (3d Cir. Oct. 14, 2010) (internal citations and
quotations omitted.) "The assumption of truth does not apply,

however, to legal conclusions couched as factual allegations or to '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" Bamigbade v. State Farm Mut. Auto. Ins. Co., Nos. 09-3868 and 09-4229, 2010 U.S. App. LEXIS 17033, *3-*4 (3d Cir. Aug. 9, 2010), quoting Iqbal, 129 S. Ct. at 1949. "A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. The Supreme Court's formulation of the pleading standard in Twombly does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." McTernan, 564 F.3d at 646 (internal quotations omitted.) At this stage of the litigation, the Court must determine if Plaintiffs have sufficiently pled their claims, not whether they can prove them. Fowler, 578 F.3d at 213; Culinary Serv. of Del. Valley, No. 09-4182, 2010 U.S. App. LEXIS 13485, *10 (3d Cir. June 30, 2010)

## IV.  DISCUSSION

Defendants do not dispute the fact that they are covered employers who are required by the FLSA to pay wages at the rate of one and one-half time the regular rate to certain employees for all time worked in excess of forty hours a week.  See 29

U.S.C. § 203(d) and (2), § 207(a)(1). Their sole argument for dismissal of the Amended Complaint – with prejudice – is Plaintiffs' failure to satisfy the pleading standards of Twombly and Iqbal.

We begin our analysis by assuming, since Plaintiffs do not argue otherwise, that the Amended Complaint replaces in its entirety the original complaint. *See* Snyder v. Pascack Valley Hosp., 303 F.3d 271, 276 (3d Cir. 2002) ("An amended complaint supercedes the original version in providing the blueprint for the future course of a lawsuit.") We therefore ignore the allegations Plaintiffs made in the original complaint that they were mis-classified as managerial employees, exempt from the overtime provisions of the FLSA, and will accept the allegation in the Amended Complaint that they were entitled to overtime wages because their positions were non-exempt.

We next turn to the elements of a *prima facie* case of entitlement to overtime pay under FLSA, based on the direction in Iqbal that the analysis should be a context-specific task. To state a claim under 29 U.S.C. § 216(b), a plaintiff must allege that: (1) the defendant was "engaged in commerce" as that phrase is defined by the FLSA; (2) he was an "employee" as defined by the FLSA; and (3) he worked more than forty hours in a week but was not paid overtime compensation for the hours

worked in excess of forty. Zhong v. August August Corp., 498 F.
Supp.2d 625, 628 (S.D. N.Y. 2007). Defendants do not dispute
the first two elements.

Following Twombly and Iqbal, courts have been divided on
how precisely the third element must be alleged in the
complaint. The Third Circuit Court of Appeals has not
explicitly addressed this question, but some other courts have
applied a fairly generous standard which allows the plaintiff to
proceed with little more than a statement of the elements of a
claim. See, e.g., Uribe v. Mainland Nursery, Inc., CA No. 07-
0229, 2007 U.S. Dist. LEXIS 90984, *7-*8 (E.D. Cal. Dec. 11,
2007) (plaintiffs who alleged they were non-exempt employees who
had not been compensated at the appropriate overtime rates had
satisfied the "liberal standard" of Twombly); Xavier v. Belfor
USA Group, Inc., CA No. 06-491 et al., 2009 U.S. Dist. LEXIS
11751, *21-*22 (E.D. La. Feb. 13, 2009) (plaintiffs alleged they
routinely worked more than forty hours per week, were not paid
overtime compensation, and were covered employees); and Qureshi
v. Panjwani, No. 08-3154, 2009 U.S. Dist. LEXIS 48142, at *10-
*11 (S.D. Tex. Jun. 9, 2009) (plaintiffs' allegations that "they
were required to work in excess of a forty-hour week without
overtime compensation, and that they were employed by the
defendants" were sufficient to state a claim under the FLSA.)

Other courts have required more detailed factual allegations. *See*, e.g., Zhong, 498 F. Supp. 2d at 628 ("the complaint should, at least approximately, allege the hours worked for which [overtime] wages were not received); Jones v. Casey's Gen. Stores, 538 F. Supp. 2d 1094, 1102 (S.D. Iowa 2008) (complaint alleging that assistant managers were not paid overtime, that the defendant "regularly and repeatedly" failed to pay plaintiff for all hours actually worked, and that the defendant failed to keep accurate time records to avoid paying plaintiffs overtime wages was "implausible on its face"); Villegas v. J.P Morgan Chase & Co., CA No. 09-261, 2009 U.S. Dist. LEXIS 19265, *13 (N.D. Cal. Mar. 9, 2009) (plaintiff's "factual" statement that she did not receive properly computed overtime wages was insufficient to state a claim under the FLSA); Harding v. Time Warner, Inc., CA No. 09-1212, 2009 U.S. Dist. LEXIS 72851, *8-*9 (S.D. Cal. Aug. 18, 2009) (allegations that the employer willfully failed to "pay and properly calculate overtime," "keep accurate records of all hours worked by its employees," and "provide all wages in a compliant manner" were "conclusory allegations as defined by Twombly" and would be assigned "no weight"); Acho v. Cort, No. 09-157, 2009 U.S. Dist. LEXIS 100064, *7-*8 (N.D. Cal. Oct. 27, 2009) (where plaintiff alleged the dates of his employment, described his job

responsibilities sufficiently for the court to infer that he was correct in his description of his position as non-exempt, and generally alleged failure of the defendant to pay overtime wages, his complaint would survive dismissal even though he had not identified the specific dates on which he allegedly worked overtime); Connolly v. Smugglers Notch Mgmt. Co., CA No. 09-131, 2009 U.S. Dist. LEXIS 104991, *5-*7 (D. Vt. Nov. 5, 2009) (complaint survived motion to dismiss where the plaintiff alleged, "as best [as] she can recall, [she] worked 60-70 hours in some work weeks, worked 50 hours in other weeks and up to 45 hours in other weeks"); Anderson v. Blockbuster, Inc., CA No. 10-158, 2010 U.S. Dist. LEXIS 53854, *6-*7 (E.D. Cal. May 4, 2010) (general allegations that plaintiff worked more than 40 hours per week and defendants "willfully failed to pay all overtime" were "no more than conclusions [and]. . .not entitled to the assumption of truth"); Solis v. Time Warner Cable San Antonio, L.P., CA No. 10-231, 2010 U.S. Dist. LEXIS 69876, *6 (W.D. Tex. July 13, 2010) (complaint survived dismissal where plaintiffs alleged the approximate number of overtime hours worked per week and provided a list of employees' titles and/or identities); and Pruell v. Caritas Christi, CA No. 09-11466, 2010 U.S. Dist. LEXIS 101761, *10-*11 (D. Mass. Sept. 27, 2010) (plaintiffs failed to state a claim when they did not allege

15

approximately how many hours they worked per week and their
hourly rate or weekly wages.)

Some cases distinguish between individual overtime claims
and those brought on behalf of a putative class. *See*, e.g.,
Stark v. Audio Mktg. Solutions, Inc., CA No. 10-3150, 2010 U.S.
Dist. LEXIS 99510, \*12 (D. Neb. Sept. 21, 2010) (recognizing
that Harding and Jones, *supra*, both involved collective actions
under the FLSA and contained "generalized allegations that
purportedly applied to the entire class of plaintiffs," while
Stark was suing only for himself and could proceed without
alleging specific dates or numbers of hours he worked overtime);
Goal v. Retzer Res., Inc., CA No. 09-137, 2009 U.S. Dist. LEXIS
119352 \*10-\*12 (E.D. Ark. Dec. 22, 2009) (making the same
distinction as Stark and allowing the case to proceed where the
plaintiff had made specific allegations about his own work
history.)

In the absence of specific guidance from the Third Circuit
Court of Appeals on this issue, we will consider whether, based
on our judicial experience and common sense, sufficient facts
have been pled that will allow us to conclude that there is more
to Plaintiffs' allegations than a simple claim that "defendants
harmed us." We begin, as directed by the Court of Appeals in
Fowler, by distinguishing between the well-pleaded facts of the

16

Amended Complaint and the legal conclusions. We arrive at the following list of factual allegations:

- Ms. Mell worked for GNC retail stores in Maryland (apparently at a number of locations) between 1983 and December 2008;

- Mr. Munoz worked in the Syracuse area at GNC outlets between 2004 and December 2008;

- Both Plaintiffs were entitled to overtime salary because their positions, although entitled "Manager," were classified as non-exempt;

- GNC had a "uniform compensation system for calculating overtime" for salaried employees (from which we infer that both Plaintiffs were paid on a salary rather than hourly basis);

- The GNC pay system in question "calculates overtime at a different rate for each work week with varying hours and varying regular pay (including incentives that are part of regular pay)"; and

- GNC had a policy or practice of requiring or allowing Plaintiffs and other members of the putative class to work "off the clock" during lunch periods, scheduled overtime, and "additional hours or shifts."

The allegations here are almost identical to those in Deleon v. Time Warner Cable LLC, CA No. 09-2438, 2009 U.S. Dist. LEXIS 74345 (C.D. Cal. July 17, 2009). There, the plaintiff alleged that during the relevant time period, he and the other class members "consistently worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week" and that the employer

17

"willfully required" him and the class members to work during meal periods and rest periods, but failed to compensate them for that work. Id. at *6. The Deleon court noted that while collective actions can rest on "somewhat more generalized pleadings," the complaint "should allege more specific facts about Plaintiff himself, if not about the entire class." Id. at *7. Where Deleon did no more than "regularly recite[] the statutory language setting forth the elements of the claim and then slavishly repeat[] the statutory language as the purposed factual allegations," he had failed to "plead sufficient 'factual content' to allow the court to make a reasonable inference that Defendants [were] liable for the claims alleged by Plaintiff." Id. at *7-*8, *citing* Iqbal and Twombly.

Based on our analysis of similar cases reiterating the threshold requirement that the complaint must possess "enough heft" to establish the plaintiff's right to relief (*see* Twombly, 550 U.S. at 557), we conclude that the facts alleged by Plaintiffs Mell and Munoz fail to establish that right. In fact, we cannot even infer from the Amended Complaint that there was a "mere possibility of misconduct" unless we accept as a "fact" that Defendants had a policy or practice of requiring their employees to work "off the clock." Plaintiffs have failed to provide *any* factual allegations to support this claim. For

18

example, they provide no information about who advised them of this policy, when they were told they were required to work "off the clock" or what the work consisted of, how the policy was imposed, approximately how many hours each week they worked without being paid, and whether either Plaintiff or any other GNC employee complained to a supervisor about the practice and, if so, what GNC's response was. Plaintiffs provide no facts about the timekeeping practices of GNC, for instance, was there literally a time clock that employees used to record their time or was it simply understood that regular working hours would be from, say, 10 a.m. to 6 p.m.?

Second, although Plaintiffs allege that they are unable to state "with specificity" the number of uncompensated hours they worked, they do not offer an approximation of such hours or a vague description of the "uniform compensation system for calculating overtime" for salaried employees. For example, neither Plaintiff alleges that he or she kept a personal diary of the hours actually worked that could be used to refute the hours recorded by Defendants. There is no explanation of what is meant by the pay system allegedly used by Defendants that "calculates overtime at a different rate for each workweek with varying hours and varying regular pay (including incentives that are part of regular pay)." While the Court agrees that

discovery might be necessary in order for former employees to get copies of the "uniform compensation system" policy, surely they would be able to estimate the time periods in which they worked without proper overtime compensation. *See* Beaulieu v. Vermont, CA No. 10-32, 2010 U.S. Dist. LEXIS 101192, \*17 (D. Vt. Aug. 5, 2010) (while a complaint cannot be expected provide the precise days and hours for which the plaintiff was not paid at overtime rates, "a critical component of a complaint alleging violations of Section 207 is an approximation of the number of unpaid weekly overtime hours worked over the employment period"); *see also* Pruell, 2010 U.S. Dist. LEXIS 101761 at \*11 (plaintiffs could not avoid pleading obligations by arguing that the defendant had better access to information concerning hours worked or wages paid; they should have pled approximations of those facts based on "information and belief.")

Next, Plaintiffs have alleged that Defendants adopted "a pervasive system to control overtime expense" by "requiring or suffering" its employees to work off the clock (Am. Compl., ¶ 21), but they fail to provide any details about this "system." By analogy, in Twombly, the plaintiffs had alleged that the defendants had entered into at least two types of "contract, combination or conspiracy" to prevent or reduce competition. Twombly, 550 U.S. at 551 (internal quotation marks omitted.)

The Supreme Court found, however, that this sort of "wholly conclusory statement of claim," was insufficient because "[w]ithout more, . . .a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." Id. at 561, 556-556. Here, we find Plaintiffs' unsupported claims of a "pervasive system to control overtime expense" to be exactly the type of conclusory allegation rejected by the Twombly Court.

Finally, we find the allegations that Defendants' actions were "knowing" and "willful" are inadequately pled. Claims under the FLSA must be filed within two years after the cause of action accrues or within three years if the alleged violation was "willful" that is, if the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988), interpreting the word "willful" as used in 29 U.S.C. § 255(a). "To state a claim for a willful violation of the FLSA, more than an ordinary violation must be alleged." Mitchell v. C&S Wholesale Grocers, Inc., CA No. 10-2354, 2010 U.S. Dist. LEXIS 68269, *12 (D. N.J. July 8, 2010), citing Frasier v. General Electric Co., 930 F.2d 1004, 1009 (2d Cir. 1991), and Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ., 579 F.3d 546, 553 (5th Cir. 2009). To satisfy

21

Iqbal, "it is insufficient to merely assert that the employer's conduct was willful; the Court must look at the underlying factual allegations in the complaint to see if they could support more than an ordinary FLSA violation." Mitchell, id. Here, however, there are no factual allegations which would support a claim that the violations were willful, for example, reports of complaints to supervisors about having to work off the clock which were rebuffed or ignored.

We conclude that Plaintiffs' Amended Complaint must be dismissed for failure to supply factual allegations sufficient to "nudge [their] claims across the line from conceivable to plausible" or to raise their "right to relief "above the speculative level." Phillips, 515 F.3d at 234, *quoting* Twombly, 550 U.S. at 555 and 570. Courts in this Circuit have been cautioned, however, that it is error to dismiss a case out of hand without giving the plaintiff an opportunity to amend the complaint. Phillips, 515 F.3d at 236 ("if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile.") Plaintiffs in this case have not only been given an opportunity to amend their initial complaint, GNC's motion to dismiss that complaint explicitly pointed out the defects which made it inadequate. Plaintiffs have done little or nothing to

resolve those shortcomings in the Amended Complaint and the Court must conclude that they are unable to do so. The Amended Complaint is therefore dismissed with prejudice.

An appropriate Order follows.

November ___9___, 2010

William L. Standish
United States District Judge